UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TEFSA KAHSAI DIRAR,

Petitioner,

v.

LOUIS STENDER, Warden,

Respondent.

Civil File No. 01-466 (JMR/SRN)

**REPORT AND RECOMMENDATION**

Tefsa Kahsai Dirar, Minnesota Correctional Facility--Willow River/Moose Lake, 1000 Lakeshore Drive, Moose Lake, Minnesota 55767, Petitioner, pro se.

Raymond F. Schmitz, Olmsted County Attorney, and Eric M. Woodford, Assistant Olmsted County Attorney, 151 Fourth Street Southeast, Rochester, Minnesota 55904, for Respondent.

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Tesfa Kahsai Dirar, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a return, (Docket Nos. 4 and 5), contending that the petition should be denied. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition must be DENIED and that this action should be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Petitioner is challenging his 1999 state court conviction for third degree criminal sexual conduct. As a result of that conviction, he was sentenced to 48 months in state prison.

FILED OCT 22 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Petitioner's conviction stems from an incident that occurred in Rochester, Minnesota, on October 10, 1995. The incident occurred at the Rochester residence of a wealthy Saudi Arabian named Ahmed Al-Dossary, who was receiving medical care at the Mayo clinic. Petitioner had been retained by Al-Dossary's family to assist them with personal and financial matters during their stay in the United States. Mr. Al-Dossary required a personal attendant to help care for him, and Petitioner hired a woman -- referred to herein as "RL" – for the attendant position.

RL started working for Mr. Al-Dossary in late September 1995. On October 10, 1995, RL reported to work at the Al-Dossary residence, served breakfast to Mr. Al-Dossary, and helped him get back to bed. At some point, Petitioner arrived at the Al-Dossary residence to make some phone calls and attend to some other business matters. Later that morning, Petitioner had sexual intercourse with RL on an extra bed located in or near the kitchen. RL later claimed that she was raped; while Petitioner claimed that the sexual encounter was consensual.

According to RL, Petitioner approached her from behind, put his arms around her waist, and called her "baby." (Trial transcript, ["Tr."], [Docket No. 5], at p. 103.) RL protested, and Petitioner let her go. However, Petitioner continued to pester her. Despite RL's resistence, Petitioner eventually pushed her onto the bed in the kitchen, pulled down her pants and forced himself upon her. (Tr. 106-16.)

According to Petitioner, he and RL had developed a close personal relationship during the two weeks prior to October 10, 1995, and their sexual encounter on that date was by mutual consent. (Tr. 279-80.)

After Petitioner and RL had sex, RL continued to perform her normal duties in the Al-Dossary household. In the afternoon, another aide arrived to help care for Mr. Al-Dossary. RL did not say anything to the aide about her sexual encounter with Petitioner. In fact, according to the other aide, RL gave Petitioner a hug, in the aide's presence, when Petitioner told the two women that it was his birthday. (Tr. 342.)

After RL left the Al-Dossary residence that afternoon, she visited a friend, but did not mention the incident with Petitioner. Later that evening, however, RL called the same friend and said that she had been raped. The friend encouraged RL to seek medical attention, and RL then went to a hospital for a sexual assault examination. The police were called to the hospital, and RL reported what had happened to her. RL never returned to her job at the Al-Dossarys' home.

When the police first interviewed Petitioner about the attack reported by RL, he denied having had sex with her. Later, however, he acknowledged having had sex with RL, but claimed that it had been consensual. Ultimately, Petitioner was charged with criminal sexual conduct.

Before Petitioner's trial began, his attorney and the prosecutor stipulated that neither party would elicit any evidence pertaining to another sexual encounter between Petitioner and RL, which occurred a few days before the incident for which Petitioner was prosecuted. During the course of Petitioner's direct examination, however, his attorney specifically asked him whether he had ever "gone to bed" with RL before October 10, 1995, and Petitioner answered "yes." (Tr. 280.) Evidently, there was no other reference to the prior sexual encounter, in the presence of the jury, until the prosecution's closing argument. The prosecutor then briefly alluded to the prior incident, arguing that –

> "Within two weeks, by October 10, the defendant claims that this relationship, this close personal relationship became a consensual sexual relationship within two weeks. Maybe even less than two weeks 'cause the defendant claimed in his testimony that he'd had sex with her on another occasion. So [in] less than two weeks the defendant is involved in a close personal sexual relationship with [RL]. Married woman of many years, who has plenty of close friends from her church group that she's able to talk with and confide in and socialize with. She would turn to the defendant for this sexual relationship so quickly. Is that believable at all?"

(Tr. 400; emphasis added.)

At the end of the trial, the jury found Petitioner guilty of third degree criminal sexual conduct. Thereafter, a new attorney filed a direct appeal on Petitioner's behalf, contending that Petitioner had received ineffective assistance of counsel at trial, because his attorney had called attention to Petitioner's prior intercourse with the victim. Petitioner also filed his own pro se brief that raised five additional claims: (1) that he was prejudiced by certain allegedly inaccurate testimony offered by RL's husband; (2) that he did not receive a copy of the police report, (3) that he was prejudiced by RL's testimony suggesting that he resided at a "halfway house," (4) that he should have been assisted by an interpreter during his trial, (because English is not his native language), and (5) that the interpreter for one of the witnesses at trial did not do an adequate job.

The Court of Appeals addressed and rejected all of the arguments raised by Petitioner's attorney and by Petitioner himself, and Petitioner's conviction was upheld. State v. Dirar, No. C3-99-1513 (Minn.App. 2000), 2000 WL 890408 (unpublished opinion). On September 13, 2000, the Minnesota Supreme Court denied Petitioner's request for further review.

Petitioner then filed his current application for federal habeas corpus relief under 28 U.S.C. § 2254. He is now re-raising the principal claim advanced in his direct appeal – i.e.,

that he was deprived of his constitutional right to effective assistance of legal counsel, because his attorney asked him whether he had ever had sex with RL before the incident that took place on October 10, 1995.[1] For the reasons discussed below, the Court concludes that Petitioner is not entitled to a writ of habeas corpus based on ineffective assistance of counsel.

---

[1] The petition also includes some brief and vague allusions to other errors allegedly committed by Petitioner's counsel. (Attachment to Petition, p. 2.) Petitioner seems to be suggesting that RL's friend -- the one who encouraged RL to go to the hospital for a sexual assault examination -- should have been questioned about an earlier call from RL, during which RL allegedly failed to mention any assault by Petitioner. (Id.) The petition also vaguely suggests that RL's friend should have been questioned about RL's alleged (but unidentified) "previous sexual encounters" with other people. (Id.) Finally, Petitioner suggests that his attorney should have explored and developed further evidence indicating that RL never complained about Petitioner to the other aide who came to the Al-Dossary residence on the afternoon of October 10, 1995.

These additional matters cannot be entertained here, as separate claims for habeas corpus relief, because they have never been presented to any Minnesota state court. King v. Kemna, No. 99-2047 (8th Cir. Sept. 17, 2001), 2001 WL 1078308 (en banc) ("It is 'the settled law of this Circuit that a habeas petitioner must have raised both the factual and legal bases for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review.'"), quoting Flieger v. Delo, 16 F.3d 878, 885 (8th Cir.), cert. denied, 513 U.S. 946 (1994).

Furthermore, none of these additional claims, (if that is what they are intended to be), has any merit. First, RL readily admitted that when she first saw her friend, she did not mention the incident at the Al-Dossarys. (Tr. 127-28.) There is no reason to believe that the outcome of Petitioner's case would have been different if the jury had known that RL also (allegedly) passed up a second opportunity to tell her friend about what had happened. Second, Petitioner has not shown that any evidence regarding RL's alleged "previous sexual encounters" would have been admissible at his trial. See Minn. R. Evid. 412 (limiting the admissibility of evidence, in a criminal sexual conduct case, of the victim's previous sexual conduct). Lastly, RL admitted that she did not mention Petitioner's assault to the other aide who came to work at the Al-Dossarys on the afternoon of October 10, 1995, (Tr. 124), and that obviously did not affect the jury's assessment of RL's credibility. Petitioner has failed to explain how additional testimony from the other aide would have helped his cause. Such testimony apparently would have done no more than substantiate what the jury undoubtedly knew -- i.e., that RL did not tell anyone what Petitioner had done to her until several hours after the fact.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus petitions filed by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

Id. at 405 (emphasis added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 413.

The Court also explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that are not reasonably supported by the evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

## III. DISCUSSION

Petitioner contends that his convictions should be vacated because he received ineffective legal assistance from his trial counsel. He alleges that his attorney erred by asking him whether he had ever had sex with RL before the incident for which he was

charged. Petitioner contends that his attorney's error was particularly grievous, because the prosecution and defense had specifically agreed that neither side would present any evidence of any prior sexual contact between Petitioner and RL. Petitioner also points out that his attorney candidly admitted that he made a mistake.[2]

The only state court discussion of Petitioner's ineffective assistance of counsel claim appears in the Minnesota Court of Appeals' decision on Petitioner's direct appeal. The Court of Appeals correctly recognized that a prisoner who claims ineffective assistance of counsel must show that (1) "the attorney's representation 'fell below an objective standard of reasonableness;'" and (2) "there is a 'reasonable probability' that 'the outcome [of the trial] would have been different but for counsel's errors.'" Dirar, 2000 WL 890408 at *2, citing State v. Lahue, 585 N.W.2d 785, 789 (Minn. 1998), Scruggs v. State, 484 N.W.2d 21, 25 (Minn. 1992), and Strickland v. Washington, 466 U.S. 668, 687 (1984).

---

[2] The day after Petitioner's counsel asked the question about prior sexual contact, he talked to the trial judge about it in chambers. He told the judge:

> "I just wanted to preserve the record and draw to your attention a mistake I think I made yesterday during my direct examination of my client. [ ¶ ] At one point I was talking to him about the incident of October 10 of '95, which is the charged incident, and then I asked him if he had any other sexual contact with the alleged victim, and he said yes, and that's when I realized that I had perhaps violated the Spreigl stipulation that we originally entered into with the prosecutor. [ ¶ ] I wanted to let you know, and I've already talked with the prosecutor about that. It was unintentional. I spoke before I thought the issue through. It was sort of like in the heat of the moment type of question. As soon as I realized my mistake I stopped. I didn't pursue the issue any further. If you recall, there was sort of a lengthy pause after that question and answer."

(Tr. 291.)

The state court's citation to Strickland clearly demonstrates that the proper legal standard was applied to Petitioner's ineffective assistance claim. Furthermore, Petitioner has not cited any U.S. Supreme Court decision involving facts that are "materially indistinguishable" from the facts of record here, in which an ineffective assistance claim was upheld. Thus, it cannot be said that the state court decision on Petitioner's ineffective assistance claim is "contrary to" established federal law, for purposes of § 2254(d)(1). See Williams, 529 U.S. at 406 (when a state court applies a Strickland analysis to an ineffective assistance claim, the court has acted in accordance with -- not contrary to -- established federal law); see also id. at 417 (Rehnquist, C.J., concurring in part and dissenting in part) ("[g]enerally, in an ineffective-assistance-of-counsel case where the state court applies Strickland, federal habeas courts can proceed directly to 'unreasonable application' review").

Petitioner has also failed to show that the State Court of Appeals' decision in his case involves an "unreasonable application of clearly established Federal law" to the facts of the case. 28 U.S.C. § 2254(d)(1). The state court assumed, for the sake of simplifying its analysis, that a reasonably competent defense attorney might not have asked Petitioner the question about his prior sexual contact with the victim. Thus, instead of discussing the first prong of the Strickland standard, (i.e., whether counsel's representation fell below an objective standard of reasonableness), the Court of Appeals went directly to the second prong, and considered whether the attorney's error probably altered the outcome of the case. See Strickland, 466 U.S. at 697 ("[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"); see also Siers v. Weber, 259 F.3d 969, 975 (8th Cir. 2001)

("[w]e need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies").

The State Court of Appeals looked at the trial record as a whole, (Dirar, 2000 WL 890408 at *3), and concluded that the error allegedly made by Petitioner's counsel probably did not alter the outcome of the trial. The state court pointed out that the evidence of the prior sexual incident was not inherently prejudicial, and that the jury may have actually found such evidence to be more exculpatory than incriminating. The Court of Appeals agreed with the state's contention that

> "defense counsel's inadvertent reference to [Petitioner's] prior sexual contact with R.L., and the subsequent reference by the prosecution to a 'sexual relationship,' if it had any effect, served to bolster [Petitioner's] contention that the sexual encounter on October 10, 1995, was consensual."

Id. at *4. In other words, if the jury believed that Petitioner had engaged in sex with RL before October 10, 1995, and that RL then returned to the Al-Dossarys without ever mentioning the earlier sexual contact to anyone, then the jury might have further believed that both the earlier incident, and the incident at issue in this case, were consensual.[3]

---

[3] It will be recalled that both the defense and the prosecution wanted to keep the jury from hearing anything about the earlier sexual incident. The prosecution presumably was concerned that jurors might be more willing to accept Petitioner's consent defense, if they believed that RL had failed to report a prior incident, and had, in fact, returned for another encounter with Petitioner. Moreover, Petitioner himself candidly admits that he had serious reservations about the stipulation to exclude the evidence of the first sexual incident. (Addendum to Petition, p. 2.) He obviously believed that evidence of the prior incident might tend to support his consent defense. Petitioner cannot credibly contend now that his conviction probably is directly attributable to the same evidence that he once thought would help to acquit him.

Petitioner apparently believes that he lost credibility with the jury when he testified about his prior sexual encounter with RL, because the jury probably did not believe that testimony. This argument might carry more weight if Petitioner had been impeached by other evidence contradicting his testimony about the first sexual encounter. But in fact, it

The State Court of Appeals found that Petitioner was unable to establish that the outcome of his trial probably would have been different if his attorney had not asked him the question about having sex with RL before October 10. Whether this Court agrees with that determination is immaterial. The only issue to be decided on federal habeas review is whether the state court's application of Strickland to the facts of this case was "objectively unreasonable." Williams, 529 U.S. at 409. Here, as in Siers v. Weber, supra, the state court's "conclusion that there was no prejudice" resulting from the attorney's alleged errors is "sufficiently reasonable to be entitled to deference under AEDPA." 259 F.3d at 975. In sum, Petitioner has not shown that the Minnesota Court of Appeals acted unreasonably in reaching the conclusion that Petitioner could not satisfy the prejudice prong of the Strickland analysis.[4]

Finally, Petitioner has not shown that the decision of the Minnesota Court of Appeals "was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2). Indeed, there are no issues of fact presented in Petitioner's ineffective assistance of counsel claim. The State Court of Appeals did not resolve any relevant factual disputes in rendering its decision; it merely applied a Strickland analysis to the record on appeal. Therefore, Petitioner cannot be granted habeas corpus relief under § 2254(d)(2).

---

appears that neither side presented the jury with any evidence that conflicted with Petitioner's testimony about the prior incident. Therefore, the jury had no identifiable reason to disbelieve Petitioner's testimony about the first incident.

[4] Although a federal habeas court need not fully agree with the state court's decision, (as long as the decision is not "objectively unreasonable"), it should be noted that in this case the Court does fully agree with the Minnesota Court of Appeals' resolution of Petitioner's ineffective assistance claim.

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Petitioner's application for a writ of habeas corpus, (Docket No. 1), be **DENIED**;

and

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: October 22, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.